Jerry ROYAL, Plaintiff in Error,

v.

The STATE of Oklahoma, Defendant in Error.

No. A–16149.

Court of Criminal Appeals of Oklahoma.

Sept. 8, 1971.

Rehearing Denied Oct. 21, 1971.

William J. Williams, Ardmore, for plaintiff in error.

Larry Derryberry, Atty. Gen., Michael D. Tinney, Asst. Atty. Gen., for defendant in error.

BUSSEY, Presiding Judge.

Jerry Royal, hereinafter referred to as defendant, was charged, tried and convicted in the District Court of Carter County for the offense of Grand Larceny, After Former Conviction of a Felony; his punishment was fixed at ten years imprisonment, and from said judgment and sentence a timely appeal has been perfected to this Court.

At the trial, Gene Murchison testified that he was employed at the Sports Club in Ardmore, Oklahoma, and that on November 8, 1969, he closed the club at approxi-

mately 9:00 p. m. He testified that there was money left in the club, with quite a few one dollar bills.

Earl Wallace testified that he was the owner-operator of the Sports Club, and that he was called to the club at approximately 1:30 a. m. on the morning of November 9th, and that there was approximately $200.00 taken, as well as one Lucerne watch, one roll of six-cent stamps, five boxes of cigars, tool chest and socket wrenches, one pair of shoes, and two transistor radios.

Charles Jones testified that on the evening of November 8th, he was with the defendant and his sister at a club east of Ardmore. He testified that somewhere between 10:00 o'clock and midnight he loaned his automobile to the defendant, who returned sometime after 1:00 a. m. When the defendant returned, he had two or three watches on his arm; he further testified that he gave permission to Officer Neasbitt to search his car.

Officer Kinard testified that the morning of November 9, 1969, he investigated a hit-and-run accident, and obtained a tag number of the car that left the scene. He subsequently observed the car which belonged to Charles Jones in the parking lot of Bob's Cafe. There was a large amount of pennies, and cigars, visible on the back floorboard of the car. The officer placed Velma Royal, the defendant's sister, under arrest for leaving the scene of an accident, and transported her to the police station. The defendant accompanied them to the police station, and posted a $20.00 bond for his sister. Defendant left the police station, stating that he was going to get a cup of coffee. The officer was instructed by a fellow officer to arrest the defendant for burglary, and attempted to stop the defendant, who was leaving in a taxi cab. The officer took pursuit in his police unit, and subsequently arrested the defendant, lying down in a vacant lot. The defendant was wearing a wrist watch, which was introduced into evidence.

Captain Neasbitt testified that he went to the Sports Club in the early morning hours of November 9, 1969, and discovered that someone had been left in the building, and had broken out through the back door. He subsequently obtained permission of Charles Jones to search his automobile, and found pennies, socket wrenches, and cigars laying in the back floorboard of the car.

John Huffaker testified that he was a part-time employee of the Sports Club, and identified the watch that the defendant was wearing when he was arrested as a watch that had previously been in the cash register of the club.

Ernest Pickens testified that he was a janitor of the Sports Club, and identified a fingernail clipper and key that was found in defendant's possession as being one and the same that had been hanging over the cash register at the club.

Earl Wallace was recalled and identified the exhibits that were found on the defendant, or in Jones' car, as being property taken from his club.

Charles Jones was recalled and testified that prior to the defendant's borrowing his car, someone called the defendant to the door of the club, and there was some conversation about defendant's brother.

Gene Murchison was recalled and testified that prior to closing the club at 9:00, he observed Roger Royal, the defendant's brother, inside the club. He did not see the defendant's brother leave the club.

For the defense, Clara Brown testified that the watch that the defendant was wearing was a watch which she purchased as a gift for the defendant at a discount store in Oklahoma City.

Velma Rogers testified that she was with the defendant and Jones, on the night in question, and that the defendant did not leave the club during the course of the evening. She testified that she borrowed Jones' car, rather than the defendant. She denied telling Officer Neasbitt that the defendant had borrowed the car.

■ The first two propositions assert that the verdict is not supported by the evidence. We have consistently held that where there is competent evidence in the record from which the jury could reasonably conclude that the defendant was guilty as charged, the Court of Criminal Appeals will not interfere with the verdict, even though there is a sharp conflict in the evidence, and different inferences may be drawn therefrom, since it is the exclusive province of the jury to weigh the evidence and to determine the facts. Jones v. State, Okl.Cr., 468 P.2d 805 (1970). We are of the opinion that the evidence was sufficient to support the verdict of the jury.

■ The third proposition contends that the evidence was obtained by illegal search and seizure. We are of the opinion that the arrest was valid under the provisions of 22 O.S.1910, § 196, which provides in part:

"A peace officer may, without a warrant, arrest a person:

\*   \*   \*   \*   \*   \*

3. When a felony has in fact been committed, and he has reasonable cause for believing the person arrested to have committed it."

In State v. Chronister, Okl.Cr., 353 P.2d 493, we stated in paragraph two of the Syllabus:

"The use of the term 'probable cause' or 'reasonable cause' itself imports that there may not be absolute, irrefutable cause. If the facts are such that a reasonably prudent man would have believed accused guilty, and would have acted upon that belief, a police officer is justified in making an arrest without warrant, although subsequent events prove that no offense had been committed, or if committed, that accused had no connection with it, where the statute authorizes arrest without warrant when the officer has reasonable grounds for believing that the person arrested had committed a felony, although not in his presence."

We, therefore, conclude that the arrest was legal, and the ensuing search of defendant's person was incident to the arrest.

■ The next proposition asserts that the punishment was excessive. This Court has repeatedly held that it is without authority to modify a sentence unless we can conscientiously say that under all the facts and circumstances the sentence was so excessive as to shock the conscience of the Court. Roberts v. State, Okl.Cr., 473 P.2d 264. Considering the fact that this is defendant's third felony conviction, we cannot conscientiously say that the sentence imposed shocks the conscience of this Court.

■ The final proposition alleges that the District Attorney improperly commented that the defendant failed to explain how he came into possession of the items taken from him at the time of his arrest. The record reflects that the District Attorney, in his closing argument, commented as follows: "We don't have any explanation from the defense as to how defendant got hold of these items. (Tr. 82). Although this proposition is improperly before this Court in that defendant failed to support this proposition by citation of authority, we have examined it and find it to be without merit. We are of the opinion that the District Attorney's statement that we do not have an explanation from the defense is not a comment on defendant's failure to testify, in that other witnesses testified for the defense.

The record is free of any error which would justify modification or require reversal. The judgment and sentence is accordingly affirmed.

NIX and BRETT, JJ., concur.